and to exceed 15 minutes of the plan, 15 minutes to be shared by the panelists. Good morning. Good morning. May it please the court, I'm Tillman Brackenridge from the William & Mary Law School Appellate and Supreme Court Litigation Clinic and I'm just here to introduce Brittany Sadler, a third year at the William & Mary Law School to argue on behalf of Richard Ortega. All right, thank you. Good morning. Good morning. Welcome. Thank you. May it please the court, my name is Brittany Sadler and I'll be arguing on behalf of Richard Ortega. Richard Ortega is a third generation American citizen and he had his constitutional rights under the Fourth Amendment and the Due Process Clause violated by both federal agents and local agents. Mr. Ortega was serving a sentence in home confinement when he was seized and taken to jail by the metro defendants. When he was seized, he was not allowed to provide proof of his citizenship and therefore was denied even the most minimal amounts of process. This was on the basis of an ICE detainer that was illegally issued by ICE agent Cloyd based merely on the fact that Mr. Ortega's name and birth date were similar to those of an illegal alien who had already been deported. However, we cannot even verify this since we have not had a chance for full discovery and have not been able to see the detainer that was issued. The district court can only dismiss the complaint if it's clear that there's no violation of a clearly established constitutional right under any set of circumstances that could be consistent, any set of facts that could be consistent with the pleading. If you haven't seen the detainer, how do you know that the name on the detainer and the birth date weren't exactly the same as your client? Those facts were pled in the complaint, Your Honor. I get it, but I'm just – how would you know to say that? Mr. Ortega is an American citizen, so his name and birth date would not be in the ICE database as an illegal alien. He's been an American citizen for three – Why isn't it possible that someone with the exact same name and birth date – it's not an unusual name. I'm just trying to figure out – I get the idea you haven't seen it, so that puts you in a difficult spot, but I'm trying to figure out how you can file the complaint. I mean, I realize there was a mistake made, but isn't it possible it was a completely innocent mistake? There actually are two Richard Ortegas born on the same day. Well, Your Honor, ICE agent Cloyd did say that it was similar to, not identical to Mr. Ortega's name and birth date. And that was at the time of the seizure? I'm sorry? When was that disclosed? At the time of the seizure? No, Your Honor. How do you have that information? I guess that's what I'm asking. I believe it's in the Federal Defendant's brief that it says that it was a mistake. This was something you were going to pursue in discovery before the case was dismissed, is that right? Yes, Your Honor. This would be something – we would get to see the specifics of the ICE detainer if we were allowed to pursue full discovery. And the court would know the contours of the mistake and whether it was reasonable, because we'd be able to see what difference, if any, there was in name and what difference, if any, there was in date of birth. Yes, Your Honor. The specifics of how unreasonable it was would be revealed fully in discovery. In the meantime, all reasonable inferences must be drawn in favor of the plaintiff and the district court. I'm just trying to get my arms around this. Because they say this in their brief might just reflect that they're giving you those inferences. You know what I'm saying? In other words, if the complaint says, which I think it does say, that it was similar but not exactly the same as the name, if they say in their brief they repeat that, that doesn't prove it's so. Well, Your Honor, where the district court – And I'm just trying to figure out if the theory of the case is, well, there must have been a mistake. So we know there was a mistake because your client's a U.S. citizen, but I'm trying to figure out if the theory is it was a mistake based on two people with the same name and the same birthday, which is one type of mistake, or it's a mistake where it's two people with similar names and similar birthdays. Yes, Your Honor. And I guess right now you probably don't know which one it is. It's – under the information that we have, it's that it's a similar name and birthday. No one has – there have been no – But the only information you have is the brief from the government. Yes, Your Honor, but – Plus the allegations in the complaint. Yes, Your Honor. The complaint alleges that there were differences in the name and the date of birth. Is that right? Yes, Your Honor. And presumably whoever filed the complaint had a basis to allege that. Yes, Your Honor. And then you couldn't further discover it because the case was dismissed. Yes, Your Honor, we didn't have – we were not able to look at the detainer and see how similar or how different the name and birthday were. But ultimately, however difficult the facts are, it appears under the law everybody's immune. Well, Your Honor, that's – that's incorrect. The Metro defendants violated Mr. Ortega's clearly established constitutional rights under the Due Process Clause and the Fourth Amendment. Under the Due Process Clause – the Due Process Clause is implicated whenever a liberty interest is endangered, and Mr. Ortega had a clearly established liberty interest in remaining in home confinement. There are several circuits that establish this liberty interest as well as the Supreme Court. Did they do it in this context, or were those probation settings, or were those – because, I mean, you would agree there wouldn't be a due process problem if the way this worked, which is, I guess, the way it normally works if you move from one jail to another because then your deprivation of liberty wouldn't be that different. Here the problem is home confinement is different from prison. Yes, Your Honor. It's the changing conditions of confinement is how extreme that is between home confinement and jail. That's what creates the due property – due process liberty interest, right? The due process liberty interest would be remaining in home confinement, so the violation was removing him from home confinement to jail with no process. The cases that establish this point, are they home confinement to jail cases, or are they probation to jail cases? There is a case, Page v. Hudson, from the Seventh Circuit that is specifically about home detention. The other cases are analogous but not exactly home detention. They're a work release program, two from a work release program, another one from an electronic supervision program, and another one from pre-parole conditional supervision. However, Page v. Hudson does specifically address home detention and the removal of a prisoner from home detention to jail without the adequate process. And so the Seventh Circuit recognized that there is a clearly established liberty interest in remaining in home confinement. And so that one Seventh Circuit decision makes it clearly established? Well, it's not only the Seventh Circuit decision, Your Honor. It's also the decisions from the Eighth Circuit, Second Circuit, First Circuit, Tenth Circuit. These were all circuits. They all addressed being moved from non-institutional confinement to institutional confinement. They were not all exactly home detention programs, but the legal analysis is very similar. And that's what the Eighth Circuit found determinative in Edwards v. Lockhart, is the fact that the prisoner had been taken from an institutional confinement and released back into society. So it's the difference between being confined institutionally and being confined at home. Also, the Metro defendants violated Mr. Ortega's Fourth Amendment rights by seizing him unreasonably. A seizure occurs when there's intentional interference in a way that would cause a reasonable person to submit. When the Metro defendants came to Mr. Ortega's house and removed him in handcuffs, did not allow him to present his identification documents, and took him to jail, they violated his Fourth Amendment rights by seizing him. They're just acting upon a facially valid detainer. Yes, Your Honor, but an ICE detainer, that's the reason the seizure was unreasonable. An ICE detainer is not a warrant for arrest, and it's not even an order for custody. So an ICE detainer does not allow the Metro defendants to take Mr. Ortega from home confinement to jail. And how's that clearly established? That's just how an ICE detainer works. It's a request. It's not a warrant for arrest. So an ICE detainer, there are several versions available, but an ICE detainer... Yeah, but I mean the premise of it is the person's already under some restraint. Yes. And I'm just saying what's the clearly established authority that sets up whether it's reasonable suspicion, whether it's probable cause? What are the rules here of the Fourth Amendment that have been clearly established? An ICE detainer, because it contemplates another seizure, requires probable cause. Immigration law has traditionally held that there must be reasonable belief, which is analogous to probable cause. So there must be probable cause first to issue the ICE detainer, and then there had to be probable cause for the Metro defendants to go in and seize Mr. Ortega, and that wasn't as established. What if I take it you would say you wouldn't have even a Fourth Amendment claim if he was being removed from one jail to another? So everything else about the case is the same, but he's being removed just hypothetically from a state jail to a federal detention center or some other jail, but the point is he's going from one jail to the other. Then this kind of still a mistake, I mean still made a mistake, but you wouldn't have a claim there, would you? That would be very different. Because he's seized either way, right? There's a pretty big difference between being seized from home and taken to jail than there is from being just transferred from one jail to another. Because in one jail cell you're seized and in the other jail cell you're still seized, so that would be harmful to the Fourth Amendment argument. And I know that's not this case, but I'm just trying to understand that background point. Yeah, well, that would still, I mean it would depend very much on the circumstances, but they could still have, people have brought up due process claims from being moved from one prison to another, but it's just what's at issue here is the fact that Mr. Ortega was at home and he was seized on the basis of a detainer that did not allow them to seize him and take him into jail. The ICE detainer is only issued to people who are already in custody. What do you think about this way of thinking about the case? I'm really asking this question to both of you. So there's prong one and there's prong two. My sense of the case, and we'll learn a little bit more from the defendants, is that they assume when they're doing this that normally it's going from one jail to another. The program itself makes some sense. If someone has been put in jail, why not run through and see if they're legally here? And if they're not legally here, that's a very good way to enforce the immigration laws. Why not enforce them against people that are violating the law? So it seems like that's the point of the program. They're assuming that normally they're taking someone from a state jail and then they're going to hold them in this other facility before they're released in order to check to make sure whether they're an illegal. The mistake they made here, and it seems at prong one, maybe you have a pretty good point, both under the due process and Fourth Amendment claims, that we ought to say, hey, listen, this program's fine, but you have to be careful when you're implementing these things in two settings. Setting one, home confinement to jail, because that's a change. Setting two, they're just about to leave jail, and this detainer forces them to stay in jail 48 hours longer. And in those two settings, you better be careful, because otherwise that's where there's some real risk of violating the individual's constitutional rights. So that's very helpful to you on prong one, but on prong two the problem is it seems to me that this is a pretty new area of the law. I'm just not even sure they were aware of this problem, because so often it's normally one jail to another jail. I just don't think you've got a due process or a Fourth Amendment right. Well, Your Honor, because an ICE detainer is a request, it's not mandatory. The ICE detainer did not require the Metro defendants to do anything, at least it's not as far as we know, and therefore it doesn't allow them to . . . and say, okay, this seems like a good idea. We better hold this person longer, make sure they're not an illegal immigrant. Yes, Your Honor, but it's not required. So the Metro defendants can't rely on the ICE detainer as having authorized their . . . Even in a jail-to-jail setting? Why not? Of course they could. In a jail-to-jail setting, so you're going from one jail to another, surely they could rely on it there, right? I would think so, but I don't. Okay, so this is the whole problem. Everyone's assuming that all of these cases are alike, they're all jail-to-jail, when in truth, we're now realizing they're not all jail-to-jail. An ICE detainer is issued to people who are already in custody, so that's the whole point. As Mr. Ortega was already in custody, there was no reason to move him to a different type of custody because there was no governmental interest in moving him to jail because he was already in custody and being detained. I see your red light's on, but is there any evidence in the record that the ICE agent knew that your client was on home detention versus in jail? I don't know, Your Honor. Okay. Fortunately, the red light's on. Does the complaint say where he was, whether at home or at work? The complaint? Yeah. He was at home. That's what the complaint says? Yes, Your Honor. Yes, I believe so. But the conditions allowed him to be at work and home? Yes, Your Honor. They allowed him to go to work. They allowed him to go to church. He's allowed to do outside activities. Okay. Well, I'm going to get you for rebuttal. Thank you. Thank you. Okay, so I don't know who's first. Good morning, Counsel. I guess this is the only second time in my life. Tell us who you are. I'm sorry, Your Honor. I'm Steve Durham. I represent the Metro Defendants. Okay. I say this is the only, probably the second time in my life that I wish I was a third-year law student, you know, at the time when I was entering that stage and, you know, to be on co-footing with counsel. But, Judge, let me talk to you about the issues that are here in this case, and that is whether there's a Fourth Amendment violation and whether there's a due process violation. So the Fourth Amendment, I mean, we're talking about an individual who has all of his liberty has been removed, at least freedom of movement has been taken from him, he's been seized. I mean, that's my opinion about it. Okay, but you have to agree it's a little different being in, quote, home confinement where you can go to work, home, church, other things versus jail. Yes, I don't disagree with that. I don't think that makes much of a difference for the Fourth Amendment analysis is my opinion because for the Fourth Amendment to occur, there has to be an unlawful seizure, and if you've already been seized by the state, I don't think you can be secondly seized. I mean, let's look at some other examples of when that occurs. I mean, for example, this court may issue or a district court may issue a order of personal appearance for a prisoner, and the prisoner then has to be placed into shackles, placed in handcuffs. He's removed from his cell, taken to another place by force of color of law. Well, that wouldn't be a Fourth Amendment seizure. What about probation? So you're out, and is that a seizure when they come in? Does that count as a seizure because you're conditionally released? It's not a seizure. Yeah, I think on probation you have a little bit of a gray area there, but on probation, again, the individuals – I would just look at the cases that have been referred to and cited in this particular matter. None of those cases where individuals were identified as having a liberty interest also had a Fourth Amendment claim. I didn't see any of that occurring, and I don't know that the Fourth Amendment protects that circumstance either. I just don't know about that. Well, then, okay, let's go to the due process claim. There's surely a difference in liberty between being in a jail cell and being in home confinement or probation. Yeah, certainly, you know, I have to agree. I would much rather be serving my sentence at home than inside the detention facility. I've been in a lot of them, and I would much prefer to be at home. Okay. So, you know, I get a feeling that – You are feeling like a third-year law student. You're agreeing with her. Well, I agree that there's a difference in feeling. I'm not so certain that it's a difference in protection. I'm not so sure that there is a recognized protection and a liberty interest in that. I mean, this one is just a little different. She says there's a Seventh Circuit case. Do you know the case she's referring to? I do. I do. It's Page, and Page is a probation case. I thought you said it was a home confinement case. No, the first segment of Page indicates it's a probation case, and actually there's a pretty thorough discussion of Page by a magistrate in a case that's not cited, but it's an Indiana case that did an examination of Page and other cases looking at whether or not – that case was looking at whether or not individuals on work release had a liberty interest in remaining there. It analyzed Page and other cases. It really did a good job of circling all the cases they could find addressing this liberty interest and came to the conclusion that where we are, and that is no one has looked at the specific example that we're looking at, and that is, is an individual who's serving a sentence, actually serving a sentence, are they given a liberty interest in the place of confinement? So I don't think it's been – you know, it certainly has been, you know, And the case you cited is not in the record or something? It's not, Your Honor. I do have the – Some law out there supports your argument. Yes, Your Honor. All right. Yes. What about our point that the detainer, unlike a warrant, doesn't require your clients to do anything? Well, I mean, does the warrant require us to do anything? Does a order of personal appearance require us to do anything? I'm not sure the requirement is the issue. The question is, what did they do, and was it unreasonable? I mean, if it's an order – let's say it's a mental inquest warrant, and they take the individual in. Would that be unreasonable? They're not required to. Let's say it was a civil – let's say an individual is being held as a material witness, and they take him. And let's say the individual is otherwise – If you get an arrest warrant, you're supposed – the police get an arrest warrant. They're not allowed to say, well, it's Thursday. I don't do that on Thursday. No, I agree. It's command. The command warrant commands them to – She's making the point this is unlike an arrest warrant. Okay. So I assume what she's trying to say is that prevents your clients from saying, hey, we're just following orders here. And your clients had an independent duty to not just arrive and say over Mr. Ortega's protestations, well, sorry, I don't – we don't care who you are. This says to pick you up. We're picking you up. I assume the point she's trying to make is your clients had a duty. If there was some information in front of you indicating that this was the wrong person, they were supposed to do something about it. They couldn't just rely on the detainer. So how do you respond to that? Well, first of all, I don't know – I mean, the detainer itself, I'm not sure a reasonable correction. I'll just look at a detainer and say that's different from an arrest warrant, so we treat that differently. And secondly, there's nothing that would require them to – individual protest all the time when law enforcement officials come to them and say I have something that pertains to you. And they would say, well, that's not me, or I didn't do that, or here's my receipt. I paid for that. So the reasonable correction officer in that position is looking at a detainer issued from a lawful body. I hear you on that point, but I guess I'm a little surprised that the average police officer, if told in an arrest warrant or detainer situation, oh, you've got the wrong person, that's my brother, that's my cousin, that's not me, and you put something right in front of them, the average police officer says, hey, sorry, I think it's you. We're going – we're moving on. Well, I think – again, I'm not a – I don't represent law enforcement, so I don't actually know what the police do. But I do know from other circumstances that I'm not sure how they're going to make the determination whether the documents that are being presented are the actual, the real documents. I don't know how they do that. I don't know how they go behind the warrant or behind the detainer and make the on-the-spot determination. I know the $100 bill came out today, a new one came out. I don't know if somebody gave that to me, whether or not it was real or false. I don't know how to determine that. And I don't know how the reasonable correctional officer or police officer makes the determination on the scene that the documentation being presented to them is documentation that indicates they need to go away. You know, again, individuals that are on home incarceration or any other confinement outside a detention facility, you know, they may not have any reason, you know, to do anything other than abide by those conditions and stay where they are. But occasionally, and we know, evidence tells us that individuals who know there's some other process out there, somebody in the jurisdiction wants them, then they make decisions that are maybe not the best decisions about whether or not to remain where they are. And so this individual and members of this organization who has a duty to supervise these individuals and keep them under watch, they made the determination that it was a better idea to put them in a closer area where they can be watched more carefully. And I don't think that's unreasonable. And I don't think the case law suggests that that would be some sort of violation of individuals' rights. All right. How are you guys dividing your time? Do you want to spend time? Half and half. Okay. All right. All right. Thanks, Judge. Thank you. May it please the Court, Max Weintraub representing the only federal defendant remaining in the case, Agent Cloyd. First of all, with regard to Page v. Hudson, Judge Posner opens the decision on page 642 as a condition of probation. It seems pretty clear this is a probation case. Let's just keep the focus on prong two for a little bit. I mean, isn't that a fair analogy? Analogy it may be, but an analogy isn't enough to find that Agent Cloyd knew he was violating a clearly established constitutionally protected liberty interest. All he did was issue the detainer that says, before you release this gentleman, hold him for up to 48 hours for ICE to investigate whether he should be, in essence, arrested, detained by ICE. Before you change the conditions of his detention, the detainer says, hold him up to 48 hours, not including weekends and holidays, for ICE to determine whether we need to come get him. Here, he was not held any extra time. The 48 hours didn't come into play. ICE, in fact, never detained, never arrested, never came and got him. As it turns out — How troubling would it be? I mean, let's just say for the sake of argument, you're right on prong two. But then on prong one, you know, it seems to me ICE and local law enforcement are not distinguishing between the classic detainer situation, one jail to another, where the program makes a lot of sense, but that they ought to be paying attention to this possibility that some of these folks are in home confinement or detainers asking someone to be kept 48 hours longer than their prison sentence. And it seems like those two scenarios, the constitutional rights are very different, and I guess I have some sympathy for Plaintiff's point that in those settings, you're not allowed to do investigative detainers when there's a material change in liberty. Well, if you don't mind, Your Honor, I'm going to ignore the extra 48 hours because that's not before the court. I can tell you there's litigation all around the country on that issue, even as you speak. There's class actions. I'm just mentioning the point that it's very similar. It is troubling. As I mentioned, my office is defending several of these, including class actions that allege those. But you don't have investigative arrest warrants, right? They're not an arrest warrant. And in this case, as Judge Black has pointed out— I'm saying that rhetorically because it's just— Sure, and I understand. And perhaps if the pleadings had even alleged that Agent Cloyd was advised by Metro that this individual was in home detention, then perhaps that concern would have been heightened, and perhaps Agent Cloyd might have done something different. But why is that Ortega's burden? I mean, this is my whole point. The whole reason I think there should be a prong-one analysis is to have ICE saying, okay, we've got to be careful here. We either have detainers that say this only applies if it's jail-to-jail, which solves the problem entirely, or they say this applies if it's jail-to-jail, but if it's not jail-to-jail, you need to make sure you've got the right person. Even if Your Honor is correct that ICE might suppose to be taking that where there's no clearly established law that says that they should— I'm asking on the assumption you're right on prong-two. Well, but if I could go on. Mallee v. Briggs finds that 475 U.S. 335, 1986 case, that qualified immunity provides ample protection, the Court found, to all but the plainly incompetent or those who knowingly violate the law. I'm asking on prong-one question. I'm assuming you win on prong-two, and I'm asking to tell me why you'd be upset and why ICE would be upset with a Sixth Circuit decision that says, fine, you're right. This was not clearly established. But as to prong-one, we think plaintiff was right, or at least was right at the motion-to-dismiss stage, and I'm thinking that's useful. But ICE didn't know in this case that he was in home detention. That's why you went under prong-two. But how could ICE be held to a standard? In the future, ICE doesn't issue detainers for anyone. They say it's a jail-to-jail. If it's a jail-to-jail thing, you can have a, quote, investigative detainer. But if you know the name doesn't line up with the person you're issuing this detainer for, and that's what we have to assume based on the complaint,  again, I guess my only point is that it's not, as far as Agent Cloyd knew, it wasn't a restraint on liberty. It was simply, as opposing counsel has suggested, Metro could have rejected the detainer, could have refused to act on it. It could have said, okay, well, before we let him out of home detention, before we officially end his detention, we'll let ICE know, and ICE can determine what would happen. In this case, I think it's clear because of what did happen. ICE, by then, had found out, had discovered that he was not the individual that they thought, that he was not subject to ICE arrest, he was not subject to removal, and so did not ever detain him. As far as ICE is concerned, ICE never detained him. ICE never restricted his liberty. ICE never did anything other than— Well, ICE really thinks of these as mere requests, and it doesn't bother them if local law enforcement doesn't even do it. I kind of doubt that. Well, there's a Tenth Amendment issue that I'm not sure that ICE can do anything other than request, Your Honor. ICE is a federal government. It can't tell a state law enforcement or a local law enforcement agency, you must do this, or what happens? As I mentioned, the Tenth Amendment, I think, would prohibit such a finding. And again, that's what other cases that have looked at this exact issue have found. Do you want a spending clause involved? Well, again, on the face of the detainer, it says it should not change—that the issuance of this detainer does not change the classification of the individual of his or her detention, and that it's issued so that ICE may investigate whether to take further action. What does that doesn't change the classification mean? Are you saying the way—what that means is local law enforcement should, if you're going to do anything, just keep him in home confinement? Is that what you mean by that? Do whatever you, local law enforcement, believe is appropriate and accurate under the circumstances. But you can't—it advises that this detainer should not change the classification. And when you say classification, that's the level of liberty deprivation? Yes, sir. The detainer's in the record, no doubt. I believe it is, although I confess to not being able to tell you that right off the top of my head. As the court has recognized, this is a 12B6, so there was no discovery presented. But I believe it is in the record. I thought counsel for the plaintiff said, we don't even know what the detainer says. I thought she said she hadn't seen it. Checking with Mr. Durham, I find that it isn't. It's not yet in the record. Yet? Well, if the case proceeds back, then there may be a record produced. But as of now, the district judge found that Agent Cloyd was entitled to qualified immunity. I believe there's no reason at all for this court to find anything to the contrary. The district court found that the ICE agent made a reasonable mistake, correct? Yes, Your Honor. And the district court made that decision based upon reading the complaint that said the name and the birth date were kind of different. But that was a reasonable mistake? Similar, but not identical, the pleading says. And why wouldn't the fact finder after discovery have an opportunity to look carefully at just what the differences were and whether or not that's a reasonable mistake? Well, again, as — Jones for black or something less difficult. Although the district court did not cite it, I think Mallee v. Briggs, again, provides the support for that. That qualified immunity defense provides ample protection to all but the plainly incompetent or those who knowingly violate the law. And in this case, Agent Cloyd could not have knowingly deprived Mr. Ortega of a constitutionally protected liberty interest because, one, he had no idea, even as pled, he had no idea that Mr. Ortega was in home detention. And, two, he could not have known or even presumed that even if he were in home detention that he would be taken to jail. And, third, even if he knew he'd be taken to jail from home detention, that that would have amounted to a constitutionally protected liberty interest deprival. So he just made a mistake. You know, the name was close. At best, he made a mistake. Or I guess at worst for our case, at best for Mr. Ortega, he made a mistake. Okay. Thanks so much for your argument. Thank you, Your Honor. We'll hear some rebuttal from Ms. Sadler. First of all, I'd like to point out that the federal government did make a statement to the press that said that they were, that the name and birth date were similar but not the same. Additionally, Page, is a case about home confinement. The prisoner was sentenced to six months of home detention. That may have been a condition of probation, but either way, it was, he was being removed from home confinement to jail, and that's, that's the similarity of that case. Additionally, I mean, there is a difference between probation and serving a sentence, right? Yes, Your Honor. I mean, that, that does seem to be relevant at the Pond 2 stage in terms, I mean, unless there's another case. I mean, are there other cases? I mean, what's your best court of appeals case that's someone serving the actual sentence at home, and then this kind of a thing happens? Well, Page V. Hudson is home, he is in home detention, but the other ones are also serving sentences. I thought he just read it to us, and it said, as part of probation, he was at home. I don't have the case with me, Your Honor. Okay. But the other cases are work release programs, electronic supervision programs, pre-parole conditional supervision. These are all instances where the person was in some form of non-institutional confinement, non-institutional confinement, that were moved to institutional confinement. Well, what about this? I mean, I assume you didn't write the complaint. I mean, it's true. On the one hand, with motion to dismiss, you know, you, if you have plausible allegations of plausible theory, you get a ticket to discovery, and then you get to get the detainer, find out what happened. But here, I mean, you can plead yourself out of court, and I know you didn't write the complaint. But, I mean, if all it says is they're similar, not identical, and I just knew they're similar, not identical, I'm not sure how that gets you out of the mistake area. I mean, I don't think that proves it was reckless. I mean, I think in a normal detainer situation, normally this would be quite legitimate to have people with a similar name and birth date to investigate whether this is the same person. Well, Your Honor, that's been said before. And it's jail to jail. Normally that would be okay. So why was Judge Habern wrong on the mistake point, given the way the complaint was written? Because you get to write the complaint the way you want to, and you can say it was reckless, but that's not in there. Well, Your Honor, he didn't have to have the intention for the result to occur. He just had to – Cloyd just had to have the intention for – to commit the act. I totally get that. The point I'm making is I don't see how it violates qualified immunity at prong two for the normal ICE procedure, the normal ICE procedure being, okay, the best case is where everything is the exact same. Then there's nothing to talk about. Now the question is what do you do if there's a minor discrepancy between spelling of name and or birth date? And I don't think the rule is that when there's any discrepancy at all, they stop. I think they are allowed to investigate further, and I'm sure it's okay for them to do this in a jail-to-jail setting. The problem is this was not jail-to-jail, but Cloyd didn't know that, and that's where it starts to look like a mistake and kind of lack of clearly established law. Well, Your Honor, I would agree that the Metro defendants are more – they're more responsible in this case than Cloyd is. However, Cloyd did still issue this detainer knowing they weren't the same, and the argument is that that was unreasonable, and that unreasonable action on the part of Cloyd is what led to the violation of Mr. Ortega's constitutional rights. Also for the Metro defendants, a reasonable officer would have at least allowed him to obtain his ID and show them. Opposing counsel mentioned that they shouldn't have to validate the identification. In this case, they didn't even let him show them his birth certificate or his Social Security card. So the very most minimal amounts of process of verifying that he is who he says he is were not taken. But what if their – and again, this goes back to the mistake thing. What if their view is there's just no difference between home confinement and jail-to-jail? So in other words, if you take the exact same case, but they visit Mr. Ortega in a jail cell, he says, hey, I'm not this person. They said, sorry, we're just doing it. I think you've already agreed that would not be a problem because it's jail-to-jail. So the only reason they made a mistake or arguably violated his constitutional rights was that it was home confinement-to-jail, but that takes you back to lack of clearly established. Because of the circuit court cases that we cited, it is clearly established that there is – it all comes down to the clearly established liberty interest in remaining in the sentence he had been given. He had been sentenced to home confinement, and he had – Mr. Ortega had a liberty interest in remaining in home confinement. So moving him from non-institutional home confinement to jail without due process violated both his due process rights and his Fourth Amendment rights. All right. Thank you. Thanks to both of you for your helpful briefs and oral arguments. Congratulations to Williams and Mary. You're obviously doing a fine job. So thanks for that excellent argument, and we'll work through the case. Thank you very much.